UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER WHITNEY,

                    Plaintiff,

    -v-

THE CITY OF NEW YORK; New York City Police
Department ("NYPD") Officer ("P.O.") TYRONE G.
MIDDLETON (Shield No. 17324); and P.O.'s JOHN
DOES 1 through 6; (The name John Doe being
fictitious, as the true names are not presently known);
In their individual capacities,

                    Defendants.

JUDGE GRIESA

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

Index No. 13 CV- 8995

ECF CASE

RECEIVED
DEC 19 2013
U.S.D.C. S.D. N.Y.
CASHIERS

       This action arises out of an interaction between plaintiff CHRISTOPHER WHITNEY and officers of the New York City Police Department ("NYPD") when defendant officers of the NYPD needlessly and without warning or justification struck plaintiff from behind and arrested him in retaliation for his having dared to inquire of them, "What is going on?"

       As and for his complaint, plaintiff CHRISTOPHER WHITNEY, by his attorneys DAVID B. RANKIN and JANE L. MOISAN of Rankin and Taylor, PLLC, does hereby state and allege:

## PRELIMINARY STATEMENT

1. This is a civil rights action brought to vindicate plaintiff's rights under the Fourth and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, <u>as amended</u>, codified as 42 U.S.C. § 1983; and pendant claims under the laws of the State of New York.

3. Plaintiff seeks an award of compensatory and punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4).

5. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the Fourth and Fourteenth Amendments of the Constitution of the United States.

6. Pursuant to New York State General Municipal Law § 50-E, plaintiff CHRISTOPHER WHITNEY filed a timely Notice of Claim with the New York City Comptroller on or about August 6, 2013. His claims were not adjusted by the New York City Comptroller's Office within the period of time provided by statute.

7. This Court has supplemental jurisdiction over plaintiff's state claims against defendants under the laws of the State of New York because they are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

8. Venue is proper pursuant to 28 U.S.C. §1391(b) in that plaintiff's claims arose in the Southern District of New York.

9. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

## PARTIES

10. At all times relevant to this action, plaintiff CHRISTOPHER WHITNEY ("WHITNEY") was a resident of Kings County in the State of New York.

11. Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a

police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

12. Defendants NYPD Police Officer ("P.O.") TYRONE G. MIDDLETON (Shield No. 17324) ("MIDDLETON") and JOHN DOE's 1 through 6, collectively referred to as the "officer defendants," were at all times relevant herein officers, employees and/or agents of the NYPD. At all times relevant to this action, the officer defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

13. The officer defendants are being sued in their individual capacities.

14. All of said defendants are employees or agents of the NYPD. Accordingly, said defendants are entitled to representation in this action by the New York City Law Department ("Law Department") upon their request, pursuant to New York State General Municipal Law § 50-k. The Law Department, then, is hereby put on notice that (a) plaintiff intends to name defendants JOHN DOE's 1 through 6 as defendants in an amended pleading once the true names and shield numbers of said defendants become known to plaintiff; and (b) the Law Department should immediately begin preparing their defense in this action.

15. Defendants' acts herein complained of were carried out intentionally, recklessly, with malice and gross disregard for plaintiff's rights.

## STATEMENT OF FACTS

16. The incident alleged herein occurred principally on May 14, 2013 at approximately 4:15 p.m. and thereafter in the vicinity of East 194th Street and Kingsbridge Road in the County of the Bronx, State of New York.

17. At the approximate time and location described, supra, plaintiff WHITNEY was on his way from his work as a second grade school teacher at Bronx Community Charter School at 3170 Webster Avenue in the Bronx to a community meeting when he noticed a large gathering of approximately 20 to 30 uniformed members of the NYPD assembled in Poe Park near Grand Concourse.

18. Passing by the park on its sidewalk, plaintiff WHITNEY inquired of the officer defendants "What is happening?"

19. Defendant John Doe 1 responded to plaintiff WHITNEY, "GET OFF THE SIDEWALK," to which plaintiff responded, "Isn't it a public sidewalk?" and turned back the way he had come.

20. With his back to the park and while crossing the sidewalk to leave, plaintiff WHITNEY, upon information and belief, was struck from behind by defendant JOHN DOE 1 and knocked face-first to the street, causing him to temporarily lose consciousness.

21. Defendants JOHN DOE's 2 through 6 witnessed the unreasonable use of force and did nothing to intervene despite being in a proximity to do so.

22. When plaintiff WHITNEY regained consciousness, still laying face-down in the street, he was aware of the officer defendant's knee in his back and of being handcuffed.

23. Due to the officer defendants' use of excessive force in knocking plaintiff WHITNEY to the ground, he suffered bruising to his chest and bruising and nerve damage due to the unreasonable tightness with which handcuffs were place upon him.

24. Defendants JOHN DOE's 2 through 6 witnessed plaintiff's arrest without probable cause, in obviously violation of his constitutional rights, yet did nothing to intervene or stop the violation.

25. Plaintiff WHITNEY was taken to the 42nd Precinct office and defendant MIDDLETON issued plaintiff a summons falsely charging him with Disorderly Conduct.

26. The charge was dismissed on July 26, 2013 at plaintiff's first appearance.

27. As a result of this incident, plaintiff WHITNEY was detained for approximately two hours.

28. As a result of this incident, plaintiff WHITNEY suffered physical, psychological, economic and emotional injuries for which he has sought treatment and/or incurred expense.

**FIRST CLAIM**
**DEPRIVATION OF RIGHTS**
**UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983**
(Against All Defendants)

29. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

30. Defendants, under color of state law, subjected plaintiff to the foregoing acts and omissions, thereby depriving plaintiff of his rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights: (a) freedom from unreasonable seizure of her person, including the excessive use of force; and (b) freedom from deprivation of liberty without due process of law.

31. Defendants' deprivation of plaintiff's constitutional rights resulted in the injuries and damages set forth above.

## SECOND CLAIM
## FAILURE TO INTERVENE – FOURTH AMENDMENT – 42 U.S.C. § 1983
### (Against Defendants John Doe's 2 Through 6)

32. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

33. Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe another member of the NYPD or other law enforcement agency employing unjustified and excessive force against a civilian.

34. Defendants John Doe's 2 through 6 were present for the above-described incident and witnessed other defendants use excessive force against plaintiff and arrest plaintiff without cause or justification.

35. Defendant John Doe 1's use of force against plaintiff was obviously excessive and unjustified under the circumstances; and his arrest without cause; yet defendants John Doe's 2 through 6 failed to take any action or make any effort to intervene, halt or protect plaintiff from being subjected to excessive force and false arrest by other officer defendants.

36. Defendants John Doe's 2 through 6's violations of plaintiff's constitutional rights by failing to intervene in other defendants' clearly unconstitutional use of force resulted in the injuries and damages set forth above.

## THIRD CLAIM
## MONELL CLAIM UNDER – 42 U.S.C. § 1983
### (Against Defendant CITY Only)

37. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

38. All of the acts and omissions by the officer defendants described above were carried out pursuant to overlapping policies and practices of defendant CITY which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant CITY and its agency, the NYPD.

39. Defendant CITY and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the officer defendants' wrongful acts and acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

40. The acts complained of were carried out by the aforementioned officer defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

41. The aforementioned customs, practices, procedures and rules of the CITY and the NYPD include, but are not limited to, the following unconstitutional practices:

  a. Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;

  b. Discouraging police officers from reporting the corrupt or unlawful acts of other police officers;

  c. Retaliating against officers who report police misconduct; and

  d. Failing to intervene to prevent the above-mentioned practices when they reasonably could have been prevented by a supervisor or other agent or employee of the NYPD.

42. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following civil rights actions filed against the CITY and analogous prosecutions of police officers:

a. Zabala v. City of New York, Index No. 3771/2010 (Sup. Ct., Kings Co.) (police officers severely beat and TASER a compliant, prone, bloodied and semi-conscious suspect after he had surrendered);

b. Ashe v. City of New York, 09-CV-9696 (GBD) (THK) (S.D.N.Y. 2010) (police officers beat and use pepper spray upon arrestees even though they were both already handcuffed and compliant);

c. Mckie v. City of New York, 12-CV-2070 (JG) (VVP) (E.D.N.Y. 2010) (Police harassed, falsely arrested, maced, and injured a young man, and charged him with blocking traffic while he stood waiting for a train at Broadway Junction; taken to Transit District 33);

d. Moise v. City of New York, 09-CV-9855 (DC) (JLC) (S.D.N.Y. 2010) (police officers beat and use pepper-spray upon a compliant arrestee while he was already in handcuffs);

e. Long v. City of New York, 09-CV-6099 (AKH) (S.D.N.Y. 2009); People v. Pogan, 06416-2008 (Sup. Ct., N.Y. Co.) (officer was prosecuted for recklessly using physical force);

f. Powers v. City of New York, 04-CV-2246 (NGG), 2007 U.S. Dist. LEXIS 27704 (E.D.N.Y. 2008) (police officer alleges unlawful retaliation by other police officers after testifying about corruption within the NYPD);

g. Carmody v. City of New York, 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 83207 (S.D.N.Y. 2006) (police officer alleges that he was terminated for cooperating with another officer's claims of a hostile work environment);

h. McMillan v. City of New York, 04-CV-3990 (FB) (RML) (E.D.N.Y. 2006) (officers fabricated evidence and used excessive force against an African-American man in Kings County and initiated drug charges against him, despite an absence of any quantum of suspicion);

i. Richardson v. City of New York, 02-CV-3651 (JG) (CLP) (E.D.N.Y. 2006) (officers fabricated evidence, including knowingly false sworn complaints, and used excessive force against an African-American man in Kings County and initiated drug charges against him, despite an absence of any quantum of suspicion);

j. Barry v. New York City Police Department, 01-CV-10627 *2 (CBM), 2004 U.S. LEXIS 5951 (S.D.N.Y. 2005) (triable issue of fact where NYPD sergeant alleged retaliatory demotion and disciplinary charges in response to sergeant's allegations of corruption within her unit and alleged that the NYPD had an "unwritten but pervasive custom of punishing officers who speak out about police misconduct and encouraging, if not facilitating, silence among officers");

k. Nonnemann v. City of New York, 02-CV-10131 (JSR) (AJP), 2004 U.S. Dist. LEXIS 8966 (S.D.N.Y. 2005) (former NYPD lieutenant alleging retaliatory demotion and

8

early retirement after reporting a fellow officer to IAB and CCRB for the officer's suspicionless, racially-motivated stop-and-frisk of a group of Hispanic youth);

l. Dotson v. City of New York, 03-CV-2136 (RMB) (S.D.N.Y. 2003) (officers arrest and use excessive force against a candidate for City Council for trespassing in his own residential building);

m. Taylor v. City of New York, 01-CV-5750 (ILG) (MDG) (E.D.N.Y. 2003) (same as Richardson, except without the excessive force; judge at the criminal trial acquitting Mr. Taylor noted, on the record, that he had "significant doubt" about the truthfulness of the officers who testified);

n. Walton v. Safir, 99-CV-4430 (AKH), 122 F.Supp.2d 466 (S.D.N.Y. 2000) (factual findings after trial that a 12-year veteran of NYPD was terminated in retaliation for criticizing the racially-motivated policies of the NYPD's Street Crime Unit and for alleging that such policies led to the NYPD shooting death of Amadou Diallo);

o. White-Ruiz v. City of New York, 93-CV-7233 (DLC) (MHD), 983 F.Supp. 365, 380 (S.D.N.Y. 1997) (holding that the NYPD had an "unwritten policy or practice of encouraging or at least tolerating a pattern of harassment directed at officers who exposed instances of police corruption");

p. Ariza v. City of New York, 93-CV-5287 (CPS), 1996 U.S. Dist. LEXIS 20250 at*14 (E.D.N.Y. 1996) (police officer alleges retaliatory duty assignments and harassment in response to his allegations about a racially-discriminatory workplace; on motion for summary judgment, the Court held that the police officer had established proof of both a widespread usage of a policy to retaliate against police officers who expose police misconduct and a failure to train in the police department);

q. Kaufman v. City of New York, 87-CV-4492 (RO), 1992 U.S. Dist. LEXIS 14049 (S.D.N.Y. 1996) (bystander arrested for observing an unlawful arrest in public, requesting the officer's badge number, and telling the officer that he planned to file a report about the arrest).

r. Sorlucco v. New York City Police Department, 89-CV-7225 (CCH), 888 F.2d 4 (2d Cir. 1989) (former officer entitled to trial on issue of whether she was re-assigned and then terminated after reporting that a fellow officer had raped her); and

43. The existence of the aforesaid unconstitutional customs and practices, **specifically with regard to the failure to supervise, train, instruct and discipline police officers and encouraging their misconduct,** are further evidenced, <u>inter alia</u>, by the following:

a. The Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department ("Mollen Commission Report"), dated July 7, 1994, states:

In the face of this problem [of corruption], the [NYPD] allowed its systems for fighting corruption virtually to collapse. It has become more concerned about the bad publicity that corruption disclosures generate that the devastating consequences of corruption itself. As a result, its corruption control minimized, ignored and at times concealed corruption rather than root it out. Such an institutional reluctance to uncover corruption is not surprising. No institution wants its reputations tainted – especially a Department that needs the public's confidence and partnership to be effective. A weak and poorly resources anti-corruption apparatus minimizes the likelihood of such taint, embarrassment and potential harm to careers. Thus there is a strong institutional incentive to allow corruption efforts to fray and lose priority – which is exactly what the Commission uncovered. This reluctance manifested itself in every component of the Department's corruption controls from command accountability and supervision, to investigations, police culture, training and recruitment. For at least the past decade, the system designed to protect the Department from corruption minimized the likelihood of uncovering it.[1]

b. Accordingly, in 1990, the Office of the Special Prosecutor, which investigated charges of police corruption, was abolished.

c. In response to the Honorable Judge Weinstein's ruling of November 25, 2009 in Colon v. City of New York, 09-CV-00008 (E.D.N.Y.), in which he noted a "widespread... custom or policy by the city approving illegal conduct" such as lying under oath and false swearing, Commissioner Kelly acknowledged, "When it happens, it's not for personal gain. It's more for convenience."[2]

d. Regarding defendant CITY's tacit condonement and failure to supervise, discipline or provide remedial training when officers engage in excessive force, the Civilian Complaint Review Board is a city agency, allegedly independent of the NYPD, that is responsible for investigating and issuing findings on complaints of police abuse and misconduct.[3] When it does, however, Police Commissioner Kelly controls whether

---

[1]    Mollen Commission Report, pp. 2-3, *available at* http://www.parc.info/client_files/Special%20Reports/4%20-%20Mollen%20Commission%20-%20NYPD.pdf.

[2]    Oren Yaniv and John Marzulli, *Kelly Shrugs Off Judge Who Slammed Cops*, New York Daily News, December 2, 2009, *available at* http://www.nydailynews.com/news/ny_crime/2009/12/02/2009-12-02_kelly_shrugs_off_judge_who_rips_lying_cops.html.

[3]    In 2006, out of more than 10,000 allegations that were fully investigated, the CCRB substantiated only 594 (about 6%). In 2007, out of more than 11,000 allegations that were fully investigated, the CCRB substantiated only 507 (about 5%). *See*, CCRB Jan.-Dec. 2007 Status Report at p. 19, *available at* http://www.nyc.gov/html/ccrb/pdf/ccrbann2007_A.pdf. Upon information and belief, the low rate of substantiated complaints is due in part to the above-noted de facto policy and/or well-settled and widespread custom and practice in the NYPD whereby officers refuse to report other officers' misconduct or tell false and/or incomplete stories, inter alia, in sworn testimony and statements given to the CCRB, to cover-up civil rights violations perpetrated by themselves or fellow officers, supervisors and/or subordinates.

the NYPD pursues the matter and he alone has the authority to impose discipline on the subject officer(s). Since 2005, during Kelly's tenure, only one-quarter of officers whom the CCRB found engaged in misconduct received punishment more severe than verbal "instructions." Moreover, the number of CCRB-substantiated cases that the NYPD has simply dropped (i.e., closed without action or discipline) has spiked from less than 4% each year between 2002 and 2006, to 35% in 2007, and approximately 30% in 2008. Alarmingly, the NYPD has refused to prosecute 40% of the cases sent to it by the CCRB in 2009.[4] As a result, the percentage of cases where the CCRB found misconduct but where the subject officers were given only verbal instructions or the matter was simply dropped by the NYPD rose to 66% in 2007. Substantiated complaints of excessive force against civilians accounted for more than 10% of the cases that the NYPD dropped in 2007 and account for more than 25% of cases dropped in 2008.[5]

44. The existence of the aforesaid unconstitutional customs and practices, **specifically with regard to the practice or custom of discouraging police officers from reporting the corrupt or unlawful practices of other police officers and of retaliating against officers who report misconduct,** are further evidenced, inter alia, by the following:

    a.  Former New York County District Attorney Robert Morgenthau has been quoted as acknowledging that, in the NYPD, there is a "code of silence," or a "code of protection" that exists among officers and that is followed carefully;

    b.  In 1985, former NYPD Commissioner Benjamin Ward, testifying before a State Senate Committee, acknowledged the existence of the "code of silence" in the NYPD;

    c.  Former NYPD Commissioner Robert Daly wrote in 1991 that the "blue wall of solidarity with its macho mores and prejudices, its cover-ups and silence, is reinforced every day in every way."

45. The existence of the above-described unlawful de facto policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officer and officials of the NYPD and the defendant CITY, including, without limitation, Commissioner Kelly.

---

[4]     Christine Hauser, *Few Results for Reports of Police Misconduct*, New York Times, October 5, 2009, at A19.

[5]    Daily News, *Editorial: City Leaders Must Get Serious About Policing the Police*, August 20, 2008.

46. The actions of the individual police defendants resulted from and were taken pursuant to the above-mentioned de facto policies and/or well-settled and widespread customs and practices of the defendant CITY, which are implemented by members of the NYPD, of engaging in systematic and ubiquitous perjury, both oral and written, to cover-up federal law violations committed against civilians by either themselves of their fellow officers, supervisors and/or subordinates.  They do so with the knowledge and approval of their supervisors, commanders and Commissioner Kelly who all: (i) tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, inter alia, in sworn testimony, official reports, in statements to the CCRB and the Internal Affairs Bureau ("IAB"), and in public statements designed to cover for and/or falsely exonerate accused police officers; and (ii) encourage and, in the absence of video evidence blatantly exposing the officers' perjury, fail to discipline officers for "testilying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover-up civil rights violations perpetrated by themselves of fellow offices, supervisors and/or subordinates against those civilians.

47. All of the foregoing acts by defendants deprived plaintiffs of federally protected rights enumerated above.

48. Defendant CITY knew or should have known that the acts alleged herein would deprive plaintiffs of their rights, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

49. Defendant CITY is directly liable and responsible for the acts of the officer defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and

regulations of the City of New York and NYPD, and to require compliance with the Constitution and laws of the United States.

50. Despite knowledge of such unlawful de facto policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the defendant CITY have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

51. The aforementioned policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein.  Specifically, pursuant to the aforementioned policies, practices and/or customs, the officer defendants felt empowered to exercise unreasonable and wholly unprovoked force against plaintiff. Pursuant to the aforementioned policies, practices and/or customs, officer defendants failed to intervene in or report other defendants' violation of plaintiff's rights.

52. Plaintiff's injuries were a direct and proximate result of the defendant CITY and the NYPD's wrongful de facto policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant CITY and the NYPD to properly supervise, train and discipline their police officers.

53. The actions of the officer defendants of employing wholly unprovoked and excessive force resulted from and were implemented pursuant to the foregoing de facto policies and/or well-settled and widespread customs and practices of the defendant CITY and were directly responsible for the violation of the plaintiff's constitutional rights.

**FOURTH CLAIM**
**FALSE ARREST AND FALSE IMPRISONMENT**
**UNDER THE LAWS OF THE STATE OF NEW YORK**
**(Against all Defendants)**

54. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

55. By the actions described above, the defendants caused to be falsely arrested or falsely arrested plaintiff, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

56. The conduct of the defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as officers of the NYPD, and/or while they were acting as agents and employees of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to plaintiff pursuant to the state common law doctrine of respondeat superior.

57. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## FIFTH CLAIM
## ASSAULT AND BATTERY
## UNDER THE LAWS OF THE STATE OF NEW YORK
### (Against Defendants John Doe 1 and the City of New York)

58. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

59. By the actions described above, defendant John Doe 1 did inflict assault and battery upon plaintiff. The acts and conduct of defendant John Doe 1 was the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

60. The conduct of defendant John Doe 1 alleged herein occurred while he was on duty and in uniform, and/or in and during the course and scope of his duties and functions as an NYPD officer, and/or while he was acting as agent and employee of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to plaintiff pursuant to the state common law doctrine of respondeat superior.

61. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## SIXTH CLAIM
## NEGLIGENCE
## UNDER THE LAWS OF THE STATE OF NEW YORK
### (Against Defendants John Doe 1 and the City of New York)

62. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

63. Defendant CITY owed plaintiff a duty of care to maintain a police department which acts in accordance with law and for which it is ultimately responsible.

64. Defendant John Doe 1 owed plaintiff a duty of care to exercise reasonable caution and proportionality in the use of force and to exercise due diligence to ascertain probable cause before affecting his arrest.

65. Defendants John Doe 1 and the City of New York, jointly and severally, breeched their duty of care and negligently caused injuries, emotional distress and damage to plaintiff. The acts and conduct of defendant John Doe 1 was the direct and proximate cause of injury and damage to plaintiff, and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

66. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## **JURY DEMAND**

67. Plaintiffs demand a trial by jury in this action on each and every one of their damage claims.

WHEREFORE, plaintiff demands judgment against defendant CITY and the officer defendants individually and jointly and prays for relief as follows:

a.  That plaintiff be compensated for violation of his constitutional rights, pain, suffering, mental anguish, and humiliation; and

b.  That he be awarded punitive damages against the officer defendants; and

c.  That he be compensated for attorneys' fees and the costs and disbursements of this action; and

d.  For such other further and different relief as to the Court may seem just and proper.

16

Dated:   New York, NY
         December 18, 2013

                                        Respectfully submitted,

                              By:       _____
                                        David B. Rankin
                                        Jane L. Moisan
                                        Rankin & Taylor, PLLC
                                        *Attorneys for the Plaintiff*
                                        11 Park Place, Ste. 914
                                        New York, NY 10007
                                        Ph: 212-226-4507